## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS

| ASSIGNED JUDGE | Timothy A. Barnes | CASE NO. | 22bk07328 |
|---|---|---|---|
| DATE | 06/05/2024 | ADVERSARY NO. | |
| CASE TITLE | In re Susan C. Ellis | | |
| TITLE OF ORDER | Order Denying Motion of Chapter 13 Trustee for Order to Modify Chapter 13 Confirmed Plan | | |

**DOCKET ENTRY TEXT**

The Motion of the Trustee to Modify Chapter 13 Confirmed Plan [Docket No. 49] is DENIED.

**[For further details see text below.]**

### THIS ORDER APPLIES IN EACH OF
### THE CASES SET FORTH ON EXHIBIT A HERETO

### <u>ORDER</u>

The matter arises out of two filings in the above-captioned chapter 13 case by the chapter 13 trustee, Thomas H. Hooper (the "<u>Trustee</u>"): (1) the Trustee's Motion to Modify Chapter 13 Plan under the Court-Approved Retention Agreement [Dkt. No. 49] (the "<u>Motion</u>"); and (2) the Notice of Unaddressed Secured Claim [Dkt. No. 50] (the "<u>Notice</u>"). The issues raised by the Trustee have been raised in a number of other chapter 13 cases by the Trustee. A list of those additional cases which were taken under advisement along with this one, is set forth on Exhibit A.[1] While the court renders this decision in the above-captioned case only, in each of the cases on Exhibit A the court will enter a minute order based on and referencing this Order.

The Court has jurisdiction over this matter. 28 U.S.C. § 1334; 28 USC 157(b); N.D. Ill. Internal Op. P. 15(a). It is a core proceeding. 28 U.S.C. § 157(b)(2)(A) & (L). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a). "[A] motion to modify a confirmed chapter 13 plan … concerns both the administration of the estate and the propriety and enforceability of the court's prior orders." *In re Carter*, 638 B.R. 379, 386–87 (Bankr. N.D. Ill. 2022) (Barnes, J.); *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[T]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."). As such, the court has statutory and constitutional authority to hear and determine this matter. *Stern v. Marshall,* 564 U.S. 462, 471 (2011).

---

[1]     The court's own review of the dockets of the matters to which the Trustee is assigned shows that the Notice, or a form of notice substantially like it, has been filed in 87 cases as of May 20, 2024. This Order is not exhaustively being applied in such cases. Unless otherwise specifically ordered by the court in such cases, this order applies only in the above-captioned case and the cases on Exhibit A, each of which were expressly taken under advisement for this issue.

The matters before the court arise out of the Trustee's concerns with administering a confirmed plan in a chapter 13 case. While those concerns are admirable, the Trustee's interpretation of how to address that concern is flawed.

In taking up the Trustee's concerns, the court notes the following salient facts:

(a)     The debtor, Susan C. Ellis (the "Debtor"), filed for bankruptcy under chapter 13 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), on June 30, 2022.

(b)     Following the commencement of the case, a bar date for nongovernmental creditors of September 8, 2022 (the "General Bar Date") and for governmental creditors of December 27, 2022 (the "Governmental Bar Date") was set. Notice [Dkt. No. 6].

(c)     On August 14, 2022, the Debtor filed her proposed Chapter 13 Plan. Chapter 13 Plan [Dkt. No. 22] (the "Plan").

(d)     The Plan is based on the official form chapter 13 plan. Official Form 113. As such, it contains the following provision in section 3.1 thereof: "Any existing arrearage on a listed claim will be paid in full through disbursements by the trustee, with interest, if any, at the rate stated. Unless otherwise ordered by the court, the amounts listed on a proof of claim filed before the filing deadline under Bankruptcy Rule 3002(c) control over any contrary amounts listed below as to the current installment payment and arrearage. In the absence of a contrary timely filed proof of claim, the amounts stated below are controlling." Plan, § 3.1.

(e)     The Plan addresses a secured claim by "Pine Valley One Real" ("Pine Valley") and multiple secured claims by the Cook County Clerk (together, the "Treated Creditors"). *Id.*

(f)     On September 22, 2022, the Trustee objected to the Plan. Amended Trustee's Objection to Confirmation of Plan [Dkt. No. 30] (the "Objection").

(g)     In the Objection, the Trustee argued, among other things, that: (i) the "Debtor [failed] [sic] to amend schedule D to address creditor Pine Valley One Real;" and (ii) "[t]he plan fails to address the … secured claim(s) … [of the] Cook County Tax Assessor." *Id.*

(h)     There was, at the time of the Objection, no allowed secured claim for the Cook County Tax Assessor.

(i)     On September 27, 2022, before Governmental Bar Date but after the General Bar Date, the undersigned's predecessor in the case confirmed the Plan. Order Confirming Plan [Dkt. No. 31] (the "Confirmation Order").

(j)     On January 3, 2023, after the Governmental Bar Date, the Cook County Treasurer's Office filed an untimely secured claim. Proof of Claim [Claims Dkt. No. 2] (the "Cook

County Claim"). The Cook County Treasurer's Office (the "Omitted Creditor") is not treated in the Plan.

(k)      The Cook County Assessor never filed a claim.

Considering the foregoing, the court will take up the propriety of the Motion and the Notice, in turn.

## THE MOTION

Before taking up the Motion, the court notes the procedural irregularity that has occurred with respect to the Motion. On May 2, 2024, the court conducted a hearing on the Motion, at which hearing it announced that the matter was taken under advisement and continued to May 30, 2024, for determination.

By taking a matter under advisement, a court is making clear on the record that nothing remains but the court's determination of the matter before it. *See, e.g.*, *Navarro v. Fuji Heavy Indus., Ltd.*, 117 F.3d 1027, 1032 (7th Cir. 1997) (noting that measuring point for a Rule 59(e) motion is when a motion is taken under advisement). Once that has happened, a party may not unilaterally act to change the matter so taken under advisement. Doing so fails to respect the role of the court in determining matters and potentially makes that determination a moving target.

Here, after the Motion was taken under advisement but before the hearing on May 30, 2024, the Trustee attempted to withdraw the Motion by communicating the same to the undersigned's deputy in hearing updates given the day prior to it. Such a request is inappropriate as it goes beyond mere scheduling.[2] Once a matter is under advisement, the parties' role is to await a determination. If there has been a change in facts that a party feels the court need know, the party may file a motion on notice to all parties requesting to supplement the matter. It may not do anything to unlevel the playing field on which the court operates without due process to all concerned and authority from the court. It may not, particularly in cases such as this where the court has indicated in advance of its determination that the matter does not favor a party, seek to avoid that determination by unilaterally withdrawing its position.

As a result, the court denies the Trustee's request to withdraw the Motion.

In the Motion, the Trustee asks for two forms of relief. First, the Trustee asks for entry of "an order removing distribution to [the Treated Creditors] under the confirmed plan." Second, the Trustee asks that the funds "earmarked [to/for] [sic] [the Treated Creditors] be disbursed to holders of other allowed claims."

While neither request is appropriate, it is clear to the court that the Trustee is doing his best to seek clarification from the court on issues that are new to him as he is new to this District.

---

[2]     *See* Code of Conduct for United States Judges, Canon 3(A)(4)(b) (permitting a judge engage in *ex parte* communication for scheduling, administrative, or emergency purposes, but only if the *ex parte* communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the *ex parte* communication).

First, the Trustee argues that "past practice in this jurisdiction has been for all secured creditors addressed in the confirmed plan to receive disbursements, regardless of whether an allowed claim had been filed." Quite so, and for good reason. The Northern District of Illinois is what some might call a "plan-forward" district. This means that chapter 13 plans are often confirmed in this district prior to the applicable bar dates having passed.

Nothing in the Bankruptcy Code dictates the timing under which a chapter 13 plan may be confirmed. While it might have been Congress's intention that chapter 13 plans only be confirmed after the passing of the applicable bar dates, that intention is never stated in the Bankruptcy Code nor, to the court's knowledge, is such intention ever communicated in the legislative history of the Bankruptcy Code.

In high volume chapter 13 jurisdictions such as this, to delay confirmation of a chapter 13 plan until the passing of the applicable bar dates would be harmful for all concerned. Debtors would be held unnaturally in a preconfirmation state, a state which this court has observed is precarious for debtors. *In re Gilliam*, 582 B.R. 459, 470 (Bankr. N.D. Ill. 2018) (Barnes, J.) ("The unavoidable fact … is that the applicable law is less flexible with respect to preconfirmation defaults than it is with respect to postconfirmation ones."). Debtors' counsel are kept without postfiling payments on their fees until the plan is confirmed. *In re Shelton*, 592 B.R. 193, 214 (Bankr. N.D. Ill. 2018) (Barnes, J.). The Trustee is also at greater risk in cases held unnaturally in the preconfirmation stage, as he will be unable to collect fees in those cases should they fail prior to confirmation. *In re Johnson*, 650 B.R. 904, 912 (Bankr. N.D. Ill. 2023) (Barnes, J.), *aff'd sub nom. Marshall v. Johnson*, 23-2212, 2024 WL 1953490 (7th Cir. May 3, 2024).

So, chapter 13 plans in this district are often confirmed before the applicable bar date(s). That creates ambiguity on how to address unfiled claims and how to address claims filed after a plan is confirmed. How, for example, should such a plan address a secured claim that the debtor believes is owed but is not yet on file?

The answer is simple: Precisely as the Debtor did in this Plan. The Debtor added to section 3.1 of the Plan those creditors that the Debtor believed were owed secured claims. In fact, the Trustee asked for that to occur in the Objection. The Objection specifically stated that it was a failure of the Plan to address Pine Valley, even though there was no secured claim on file for Pine Valley.

That the Trustee now claims that the inclusion of Pine Valley's claim in the Plan was an error is a good indication that the Trustee is not seriously adopting such positions, but rather is asking the court for guidance. Were it the case that the Trustee is now adopting such a contrary position, at the very least, the Trustee would be judicially estopped from changing his position in this way after having prevailed on the issue in the first instance in the objection. *In re Montemurro*, 581 B.R. 565, 577 (Bankr. N.D. Ill. 2018) (Barnes, J.) (citing to *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1547 (7th Cir. 1990) ("The offense is not taking inconsistent positions so much as it is *winning*, twice, on the basis of incompatible positions.") (emphasis added)).

To be clear, the Trustee is not incorrect in believing that there is cause to change positions on this arising out of the Seventh Circuit's holding in *Pajian*. *In re Pajian*, 785 F.3d 1161, 1164–65 (7th Cir. 2015). It is no surprise that the Trustee needs guidance in light of the possible readings of *Pajian*. In *Pajian*, the Seventh Circuit held that "[a] creditor must file a proof of claim in order to participate

in Chapter 13 plan distributions." *Id.* at 1163. That can be read very broadly, but to do so goes beyond what was before the Seventh Circuit in *Pajian* and asserts a conclusion of law contrary to the structure of the Bankruptcy Code. The only fair reading of the Seventh Circuit's statement is a much narrower one.

There is no question that *Pajian* rightfully stands for the proposition that a secured creditor must comply with the claims procedures of the Bankruptcy Code in order to have an allowed claim. *Id.* There is, frankly, no reading of the Bankruptcy Code or Rules that could reasonably lead to a different result. The Seventh Circuit in *Pajian*, however, made it expressly clear that it was not considering facts other than those before it. *Id.* at 1164–65. Those facts, in turn, make clear that the question being asked of the Circuit was whether a secured creditor could force its inclusion in a chapter 13 plan when it had not complied with the claims procedures under the Bankruptcy Code. *Id.* The answer was emphatically no.

What was *not* before the Seventh Circuit in *Pajian* and what the decision in *Pajian* cannot rightfully therefore address is whether a debtor can voluntarily include such a creditor in the debtor's plan.

The answer there is also yes, but perhaps not so emphatically.

Those who read the Seventh Circuit's language in *Pajian* broadly fall into a trap that a number of nonbankruptcy courts also fall victim to. It speaks of disallowing claims. *Id.* at 1164 ("[A] court must disallow the claim …."). Disallowing claims is not, in fact, what bankruptcy courts do.

As this court explained recently, the claims allowance process is one about whether a creditor should be afforded an opportunity to participate in distributions from the bankruptcy estate. *In re Spiegel*, 657 B.R. 34, 51–52 (Bankr. N.D. Ill. 2024) (Barnes, J.) ("Claims objections are first and foremost determinations as to whether and to what extent a claimant is entitled to share in a bankruptcy estate (the claimant's piece of the pie). They are not necessarily determinations on the merits of the nonbankruptcy issues and are treated as such by the Bankruptcy Code and Bankruptcy Rules."). Put another way, claims objections might be resolved purely as a matter of bankruptcy law and never reach the merits of the claim under nonbankruptcy law.

A claim is about nonbankruptcy entitlement. 11 U.S.C. § 101(5). The existence of that entitlement is not abrogated by the claims allowance process. Instead, a claim is either allowed or it is not. It generally is not disallowed, as that implies somehow negating the merits of the nonbankruptcy entitlement. True, that nonbankruptcy entitlement guides the allowance process, *see* 11 U.S.C. § 502(b)(1), but unless the court must resolve the claim's propriety to determine the claim's allowance, *see, e.g.*, 11 U.S.C. §§ 502(d) & 502(e) (each providing express instances where the court should "disallow" a claim), the merits of the nonbankruptcy claim does not go away simply because a claim is not allowed.

As a result, in bankruptcy, the correct nomenclature is that, except in the instances noted above, there are claims and there are allowed claims. The former are the rights under nonbankruptcy law and the latter are those which must be addressed in bankruptcy. While it may seem like this is a distinction without a difference, it is not. To understand why not, one need simply look to sections 1322 and 1325 of the Bankruptcy Code. Section 1322(b) defines what a chapter 13 plan *may* contain.

11 U.S.C. § 1322(b). Sections 1322(a) and 1325 state instead what a plan *must* contain. 11 U.S.C. § 1322(a) & 1325.

Even the most cursory review of these sections makes clear that Congress sometimes uses the bare term "claim" and sometimes uses the more exclusive category "allowed claim." For example, section 1322(b)(2) permits a plan to "modify the rights of the holders of secured claims." Not allowed secured claims. Secured claims. By the same token, section 1322(b)(3) permits a plan to cure a default. It makes no mention of whether the default relates to a claim or an allowed claim. Section 1322(b)(8) states that a plan may "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor." A claim. Not an allowed claim. Nothing in any of these sections states that the claims in question must be allowed. Compare these to, for example, section 1322(b)(6), which states that the plan may "provide for the payment of all or any part of a claim allowed under section 1305 of this title."

The court could simply read around these word choices and insert its own predilections as to what these statutes mean. But that is poor jurisprudence. As both the Supreme Court and the Seventh Circuit have admonished and instructed, the court should first attempt to read the statute in accordance with its plain language. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242 (1989); *Ryan v. United States (In re Ryan)*, 725 F.3d 623, 626 (7th Cir. 2013). The plain language is that Congress sometimes addressed claims and sometimes addressed allowed claims. Congress clearly knew how to distinguish between claims and allowed claims and did so within section 1322. In such instances, the role of the courts is to apply the language of the statute as written by Congress, not a more idealized version that presumes an unexpressed intention of Congress and blurs the separation of powers between the legislative and judicial branches.

As a result, the court cannot conclude that the inclusion of an unfiled secured claim in a chapter 13 plan is an error. It does not violate the express terms of the Bankruptcy Code, nor does it offend the ruling in *Pajian* when considered in its proper context. It is essential to make a plan-forward district such as this work.

It is worth noting here that this District has adopted the National Plan. That National Plan is not without flaws, however. Part 3 of the National Plan—the section designated for the treatment of secured claims—is particularly problematic. It includes, for example, the overreaching provision that removes from the chapter 13 plan the treatment of secured claims on collateral should any stay relief as to that collateral be granted in the bankruptcy case. Stay relief does nothing other than remove an injunctive protection, however. It does not change what is or is not property of the estate under section 541 or the court's exclusive jurisdiction over that property under 28 U.S.C. § 1334(e). The court regularly modifies this provision on the objections of potentially affected creditors such as the City of Chicago.

Section 3.1 of the National Plan serves two purposes. On the one hand, it provides for payments from the Trustee on account of arrearages. Those arrearages are paid through disbursements from the Trustee and are determined first by any amount of said arrearages in a timely filed claim by the applicable creditor but, in the absence of such a timely filed claim, by the amounts set forth in Part 3. *See* Plan, § 3.1. On the other hand, it acts as a mechanism to determine the amount of secured claims under section 506 and Bankruptcy Rule 3012(a), as implemented in the Plan through Bankruptcy Rules 3012(b) and 3015(g), and to make payments on such claims as determined thereby. These payments are either made by the Debtor or the Trustee. The determination here is not

dependent on what a proof of claim to the contrary might include per the express terms of the Bankruptcy Rules. Fed. R. Bankr. P. 3015(g) (the determination of the amount of a secured claim is binding even if there is a contrary claim on file and regardless of whether an objection to such a claim is on file).

The inclusion of claims in section 3.1 is, therefore, not limited to claims allowance or disbursements. It is about the authority in section 1322 and the ability of the debtor to modify secured claims. The court cannot see the error of including a secured claim, which exists irrespective of whether a proof of claim is on file, in section 3.1 for those or any other permissible purpose. It would be a mistake to remove a claim from section 3.1 simply because the Trustee is vexed by making disbursements on the same.

But what if such inclusion were an error? The result would be no different.

Section 1329, which the Trustee relies on in making his request to modify the Plan, quite simply does not authorize the court to make the sort of changes the Trustee requests. Section 1329(a) sets forth four types of changes that may be made thereunder to confirmed chapter 13 plans. The change the Trustee requests here—to remove a creditor because its inclusion appears to violate the Bankruptcy Code—is not one of those changes. 11 U.S.C. § 1329(a). The Seventh Circuit has made clear, however, that the list in section 1329(a) is an exclusive one. *Germeraad v. Powers*, 826 F.3d 962, 970 (7th Cir. 2016) ("[M]odification is allowed only if it will modify the plan in one of the ways specified in § 1329(a)(1)–(4)."); *In re Witkowski*, 16 F.3d 739, 745 (7th Cir. 1994) (modification is only permitted if it falls within one of the express provisions of section 1329).

True, as this court said in *Carter*, this court can also modify plans by modifying confirmation orders, as the power over the court's own orders is inherent and not a creature of statute. *Carter*, 638 B.R. at 386–87. The method for fixing errors in court orders, though, is prescribed by the rules, in particular Rule 60. Fed. R. Civ. P. 60 (made applicable in bankruptcy matters by Fed. R. Bankr. P. 9028). While it is not an error to have included an unfiled claim in a plan, perhaps it is grounds for modification of the confirmation order under one of the subsections of that Rule.

But, absent that, the Supreme Court made clear that a court need not invalidate confirmation orders under Rule 60. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010). In *Espinosa*, the Supreme Court found that a confirmation order was the result of a "legal error," but nonetheless concluded that the order remained enforceable. *Id.* Specifically, the Supreme Court was faced with argument by an affected creditor that a confirmation order should be voided if it confirmed a plan that failed to satisfy the statutory requirements it relied on. *Id.* at 264. That is nearly identical to the request made by the Trustee in the Motion.

So even if the Plan here was incorrect, the Confirmation Order stands and the route to correcting it chosen by the Trustee is unavailing. Also, to be clear, though this may be an uncomfortable position for the Trustee, he can take comfort in knowing that he must first and foremost abide by the Confirmation Order as it stands, irrespective of his views of what is required by the Bankruptcy Code, the Bankruptcy Rules or the case law.[3] *Id.*; *see also Alexander v. Chicago Park*

---

[3]     The court is aware that *Pajian* relies in part on the terms of Bankruptcy Rule 3021, which states that "[e]xcept as provided in Rule 3020(e), after a plan is confirmed, distribution shall be made to creditors whose

*Dist.*, 927 F.2d 1014, 1025 (7th Cir. 1991) ("Parties must obey court orders regardless of their validity, unless the orders are stayed pending appeal."). The Confirmation Order is not void *even if erroneous*. The Confirmation Order and the Plan it confirmed together constitute an express and unequivocal order of the court. *Cf. In re Res. Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010). If the Trustee has difficulty in complying with a court order, he may bring the matter before the court in the proper manner and the court would welcome the opportunity to weigh in. The Motion quite simply fails to do that.

Should there be systemic issues with the implementation of the National Plan in this District, the Trustee is welcome to raise them in the local bench/bar committees. Weighing in nationally on possible amendments to the National Plan may also be appropriate. In the meantime, however, the Trustee must administer the Plan as confirmed.

To that end, the second form of relief sought in the Motion is that the funds "earmarked [to/for] [sic] [the Treated Creditors] be disbursed to holders of other allowed claims." This too seems to be a request for court guidance.

As noted above, the Treated Creditors are included in section 3.1 of the Plan. Plan, § 3.1. As such, they are to receive distributions on arrearages from the Trustee. But they are also to receive distributions on account of current obligations, either from the Debtor or the Trustee. *Id.* As only some of the distributions earmarked for the Treated Creditors are within the control of the Trustee, only some of the distributions earmarked for the Treated Creditors could be potentially redirected.[4]

The concept of redirecting funds under the Plan is not without complication. True, if the overflow box of section 5.1 is checked (as it is here), creditors might be given more than the committed percentage in that same section. Plan, § 5.1. But here, the Plan already commits to a 100% distribution. *Id.* What could happen is the funds could be paid earlier to other creditors and thus the Plan's commitment period might be reduced. Another possibility is that the Plan could remain controlling for the entire commitment period and that monthly payments could nonetheless be reduced. Neither result is clearly required and neither is clearly invoked by the Trustee's request in the Motion.

Of course, should the Trustee have made distributions to the Treated Creditors that have been returned, the default presumption must be that they be treated in accordance with applicable law, 11 U.S.C. § 347; Fed. R. Bankr. P. 3011, and not disbursed to other creditors. And should the Debtor wish to change the way such distributions are handled, it is the responsibility of the Debtor to make that request. It is the Debtor, not the Trustee, that should determine that outcome.

Given that the court finds the request to remove the Treated Creditors to be unsound, the court need not consider further what should happen. But should the Trustee repeat a similar request

---

claims have been *allowed*, to interest holders whose interests have not been disallowed, and to indenture trustees who have filed claims under Rule 3003(c)(5) that have been allowed." Fed. R. Bankr. P. 3021 (emphasis added). But rules cannot "abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075. So, Rule 3021 cannot eliminate a right to "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor." 11 U.S.C. § 1322(b)(8). Again, even if it did, the Trustee would be obligated to adhere to the terms of the confirmed Plan, not Rule 3021.

[4]     The issue of how to address a secured claim filed after confirmation of a plan is addressed below.

or make the same to other judges of this court, he would be well served to consider what might actually happen if the request was granted and plead more specifically to that result.

## **THE NOTICE**

For similar though not identical reasons, the Notice is also problematic. With respect to the Cook County Claim, the Notice states:

> Notice to parties in interest:
>
> COOK COUNTY TREASURER filed Proof of Claim #2 on January 03, 2023, the debtor's plan as confirmed does not address the claim. Trustee will not disburse, nor reserve funds on account of the Claim, unless or until the chapter 13 plan is modified to address this claim.

Notice.

There are several problems with the Notice.

First, it is unclear to the court whether the Trustee has considered that the Cook County Claim is late. The Cook County Claim was filed on January 3, 2023, well beyond the Governmental Bar Date of December 27, 2022. As a late-filed secured claim, the Cook County Claim falls squarely within the holding of *Pajian*. *Pajian*, 785 F.3d at 1165. As the Cook County Claim is late, *Pajian* instructs that the Omitted Creditor cannot force its inclusion in the Plan. At the same time, however, the Notice implies that the Debtor can still nonetheless amend the Plan to address the late-filed claim. If this implication is intended, the Trustee appears to be taking contradictory positions in the Motion and in the Notice. The former encourages the court to read *Pajian* more expansively than intended. The latter appears to advocate a reading of *Pajian* so narrow as to contradict its express holding. If a debtor can voluntarily include a late-filed secured claim (which, as late, is not an allowed claim) in her plan, why then can't a debtor voluntarily include a claim that is not an allowed claim because no proof of claim was ever filed? If the Trustee was aware the Cook County Claim was late, why was the Notice necessary? The Plan is clear that it incorporates timely filed secured claims. Plan, § 3.1.

Further, the Cook County Claim *is* treated in the Plan. Section 3.1 clearly addresses a claim by the Cook County Clerk. The fact that the Cook County Claim was asserted by the Cook County Treasurer and not the Cook County Clerk does not appear to be a meaningful distinction here. These are both agents, departments or instrumentalities of the actual creditor, Cook County.[5] The claim is owed to Cook County and the Plan addresses the same. No entity from Cook County has registered with the court under Bankruptcy Rule 5005(e). If there is ambiguity caused by the difference between the Cook County Treasurer and the Cook County Clerk and the Trustee needs to resolve that ambiguity in order to administer the Plan, he should seek a court order to that effect. The Trustee should not, as was done here, notice that the former will not be paid and request that the latter be removed from the Plan. Taken together, Cook County would get nothing. The positions taken are

---

[5] As noted above, the Trustee objected to the Plan based on its failure to include the Cook County Tax Assessor, yet another variation.

contradictory. If the Trustee is having trouble complying with the Confirmation Order, he may seek redress from the court in the normal manner, but he may not fail to abide by the Confirmation Order.

By the same token, it appears that the Trustee does not only file such notices in cases where the secured claim is late. Having searched for and located the nearly one hundred cases in which the Trustee has filed such a notice, the court needed only look to the first to see that the Trustee files such notices with respect to timely filed secured claims. On May 17, 2024, the Trustee filed a notice substantially similar to the Notice here in the chapter 13 case of Jason and Jennifer Jones. *See* Notice [Dkt. No. 46 in *In re Jones*, Case No. 22bk13306] (the "Jones Notice"). In the Jones Notice, the Trustee observes that OneMain Financial Group of Claim has filed a secured claim that the debtors' chapter 13 plan does not directly address. That claim was filed in a timely manner, unlike the Cook County Claim here.

While the notice is the same, the timeliness of the claim is different. As a result, it makes unclear what the Trustee believes should be done here. What he states are courtesy notices to debtors instead appear as unilateral changes without court authority. If the Trustee wants to know how such claims should be addressed in a plan, he can file a motion to that effect and the court would be happy to oblige.

If the Trustee has not considered the applicable bar date, then it appears that the Trustee is ignoring the express terms of the Plan and *Pajian*. Plan, § 3.1.

To be clear, when an unsecured claim is filed after a plan is confirmed but before the applicable bar date, it is automatically addressed under the plan as said plan addresses unsecured creditors *en masse* and it would simply be included in the pool. When a secured claim is filed after a plan is confirmed but before the applicable bar date, there are two possible outcomes.

If the claim is already addressed in section 3.1, the newly filed claim overrides the amounts in section 3.1. The Trustee must pay the arrearages under the plan and the Debtor or the Trustee, whichever was elected to pay the creditor, must pay the amounts as they come due going forward.

If instead the claim was not addressed at all in section 3.1, the plan is silent as to such claim unless addressed elsewhere, such as a nonstandard provision under section 8.1. Nothing prevents the Trustee from, as part of confirmation, requesting language in section 8.1 that clarifies the treatment of such claim as he does with respect to tax disclosures.

Again, the Trustee is welcome to raise these issues in the local bench/bar committees and weigh in nationally on possible amendments to the National Plan.

In this case, if the Cook County Claim were timely, the Plan would operate to address that claim as the Plan already included Cook County in section 3.1. The amounts would be overridden by the Cook County Claim, but its treatment would be otherwise in accordance with section 3.1 of the Plan. As the Cook County Claim is not timely, however, the late filing of the Cook County Claim should not change how the Trustee administers the Plan and no notice to that effect is necessary.

The Trustee's counsel has indicated in the above-captioned case that notices such as the Notice are done as a courtesy to inform affected parties of what is happening. That is all well and good so long as what is happening is in accordance with the Plan and the Bankruptcy Code and

Rules. But the Notice's use for both timely and untimely claims is confusing, at best. For that reason, the court cautions the Trustee that the Notice skirts on the problematic. Without more, the court has no further role in this matter.

## **CONCLUSION**

It is therefore the court's conclusion that the Motion is hereby DENIED.

_____
TIMOTHY A. BARNES
Judge, United States Bankruptcy Court

Exhibit A

| Debtor | Case No. |
| --- | --- |
| Donna M Cruder | 22bk01050 |
| Jill Renee Crawford | 22bk12611 |
| Andres Ramon Guevara | 23bk08004 |